James NEIBERGER, Danford Eldridge, Paul Gardner, and Terence Jacobs, Plaintiffs,

v.

Robert HAWKINS, individually and in his official capacity as Superintendent of the Colorado Mental Health Institute at Pueblo; Garry Toerber, individually and in his official capacity as Associate Manager for the Office of Direct Services of the Department of Human Services; Colorado Department of Human Services; and Colorado Mental Health Institute at Pueblo, Defendants.

No. CIV.A.99–B–1120.

United States District Court, D. Colorado.

July 9, 2001.

Steven W. Black, Stephanie B. Edinger, Holland & Hart, LLP, Thomas F. Quinn, Solomon, Pearl, Blum & Quinn, David H. Miller, Miller, Lane, Killmer & Greisen, LLP, Kathleen Mullen, Denver, CO, Sylvia V. Kirk, Sylvia V. Kirk, Atty at Law, Englewood, CO, for plaintiffs.

Cathy H. Greer, Pamela Leggett Skelton, Wells, Anderson & Race LLC, Christine M. Arguello, Attorney General's Office, Denver, CO, for defendants.

## MEMORANDUM OPINION AND ORDER

BABCOCK, Chief Judge.

Plaintiffs James Neiberger, Danford Eldridge, Paul Gardner, and Terence Jacobs bring four surviving claims against Defendants Robert Hawkins, individually and in his official capacity as Superintendent of the Colorado Mental Health Institute at Pueblo; Garry Toerber, individually and in his official capacity as Associate Manager for the Office of Direct Services of the Department of Human Services; Colorado Department of Human Services; and Colorado Mental Health Institute at Pueblo. Defendants move to dismiss Plaintiffs' Americans with Disabilities Act claim. The motion is adequately briefed and oral argument would not materially aid its resolution. For the reasons set forth below, I grant Defendants' motion to dismiss. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1443.

### I. Facts and Procedural History

The facts in this case are set out in *Neiberger v. Hawkins*, 70 F.Supp.2d 1177 (D.Colo.1999), *aff'd*, 2001 WL 227405 (10th Cir.2001), and need not be fully repeated here. This action was brought by patients of the Forensic Institute at the Colorado Mental Health Institute at Pueblo who were placed there pursuant to criminal adjudications of not guilty by reason of insanity. They allege a combination of hostile conditions and policies that prevent them from obtaining appropriate medical and psychiatric care.

Defendants moved to dismiss Plaintiffs' Second Amended Complaint. In *Neiberger v. Hawkins*, 70 F.Supp.2d 1177

(D.Colo.1999) I granted the motion in part, denied it in part, and held it in abeyance in part. The following claims survived that Order: (1) violation of Colorado's Care and Treatment of the Mentally Ill Act as against all Defendants, but without any entitlement to damages; (2) violation of Due Process pursuant to 42 U.S.C. § 1983 as against Mr. Hawkins and Mr. Toerber in their official capacities for prospective injunctive relief only, and in their individual capacities as pled; (3) violation of Title II of the ADA as against the State Defendants and individual Defendants in their official capacities; and (4) negligence as to all Defendants. I also denied Defendants' assertions of qualified immunity and immunity pursuant to the Colorado Governmental Immunity Act. Defendants pursued an interlocutory appeal, and the case was stayed. The Tenth Circuit affirmed and remanded on March 8, 2001. *See Neiberger v. Hawkins*, 2001 WL 227405 (10th Cir.2001).

As part of Defendants' original motion to dismiss, I held in abeyance that portion of the motion which sought dismissal of Plaintiffs' ADA claim, pending issuance of a ruling from the United States Supreme Court in *Kimel v. State Bd. of Regents*, 139 F.3d 1426 (11th Cir.1998), *cert. granted by Kimel v. Florida Bd. of Regents*, 525 U.S. 1121, 119 S.Ct. 901, 142 L.Ed.2d 901 (1999) and *United States v. Florida Bd. of Regents*, 525 U.S. 1121, 119 S.Ct. 901, 142 L.Ed.2d 901 (1999). The Supreme Court issued its ruling on January 11, 2000. *See Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), holding that the Age Discrimination in Employment Act (ADEA) did not validly abrogate states' Eleventh Amendment immunity from suit by private individuals. I also required that the Defendants comply with D.C. Colo. L.R. 24.1 within 10 days from the date of the Order to preserve arguments of the constitutional infirmity of Title II of the ADA. They did so on No-

vember 24, 1999. I now decide that portion of the motion previously held in abeyance.

## II. Motion to Dismiss

A motion to dismiss based on sovereign immunity is treated as a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See King v. United States*, 53 F.Supp.2d 1056, 1064 (D.Colo.1999); *Neiberger*, 70 F.Supp.2d at 1181. Federal courts are courts of limited jurisdiction and they may exercise jurisdiction only when specifically authorized to do so. *See Castaneda v. Immigration & Naturalization Serv.*, 23 F.3d 1576, 1580 (10th Cir.1994). Given this limited authority, there is a presumption against federal jurisdiction. *See Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F.Supp. 279, 281 (D.Kan.1995) (citing *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974)). Because the party invoking the jurisdiction of the court has the duty to establish that federal jurisdiction exists, it is the plaintiff who bears the burden of showing why the case should not be dismissed when federal jurisdiction is challenged. *See id.; Jensen v. Johnson County Youth Baseball League*, 838 F.Supp. 1437, 1439–40 (D.Kan.1993). A court lacking jurisdiction must dismiss the case at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking. *See Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir.), *cert. denied*, 516 U.S. 863, 116 S.Ct. 174, 133 L.Ed.2d 114 (1995). Challenges to jurisdiction under Fed.R.Civ.P. 12(b)(1) generally take two forms: facial attacks on the sufficiency of jurisdictional allegations and factual attacks on the accuracy of those allegations. *See Holt v. United States*, 46 F.3d 1000, 1002–03 (10th Cir.1995). Defendants' motion falls within the first category.

## A. Eleventh Amendment Immunity Generally

Defendants move to dismiss Plaintiffs' ADA claim on the grounds of Eleventh Amendment Immunity. "The Eleventh Amendment generally bars suits against a state in federal court commenced by citizens of that state or citizens of another state." *Elephant Butte Irrigation Dist. of New Mexico v. Department of Interior,* 160 F.3d 602, 607 (10th Cir.1998), *cert. denied,* 526 U.S. 1019, 119 S.Ct. 1255, 143 L.Ed.2d 352 (1999). There are three primary methods, however, in which a plaintiff can circumvent the Eleventh Amendment. *See J.B. ex rel. Hart v. Valdez,* 186 F.3d 1280, 1285–86 (10th Cir.1999) (citing *Elephant Butte,* 160 F.3d at 607; *ANR Pipeline Co. v. Lafaver,* 150 F.3d 1178, 1187–88 (10th Cir.1998), *cert. denied,* 525 U.S. 1122, 119 S.Ct. 904, 142 L.Ed.2d 902 (1999)). First, a state may consent to the action. *See id.* at 1286 (citations omitted). "Second, 'Congress may clearly and expressly abrogate the states' immunity.'" *Id.* (citations omitted). Third, "a party may sue a state official pursuant to *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." *Id.* (citation omitted); *see also Glazer's Wholesale Drug Co., Inc. v. Kansas,* 92 F.Supp.2d 1228, 1230–31 (D.Kan.2000). Plaintiffs assert that jurisdiction is proper under the second of these exceptions, as Congress abrogated the states' immunity in the ADA.

Defendants argue that Title II of the ADA unconstitutionally abrogates states' sovereign immunity. They contend that even an express statutory waiver of sovereign immunity such as that contained in the ADA, 42 U.S.C. § 12202, is ineffective if Congress does not possess constitutional authority to subject a nonconsenting state to suit under the Act. The Supreme Court has established a two-part test to determine whether Congress properly abrogated the states' Eleventh Amendment immunity: (1) a court must determine whether Congress has unequivocally expressed its intent to abrogate immunity; and (2) a court must determine whether Congress acted pursuant to a valid exercise of power. *See Martin v. Kansas,* 190 F.3d 1120 (10th Cir.1999) (citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). Although Defendants concede that the ADA "unequivocally" abrogates immunity, they argue that Title II's abrogation is unconstitutional.

## B. Current State of the Law

The Supreme Court recently ruled in *Board of Trs. of Univ. of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) that suits in federal court by state employees to recover money damages under Title I of the ADA are barred by the Eleventh Amendment. However, *Garrett's* holding is limited to Title I of the ADA. The Court in *Garrett* refused to rule on whether Title II claims were similarly barred, writing that it was "not disposed to decide the constitutional issue whether Title II, which has somewhat different remedial provisions from Title I, is appropriate legislation under §§ 5 of the Fourteenth Amendment when the parties have not favored us with briefing on the statutory question." *Garrett,* 531 U.S. at ——, 121 S.Ct. 955, 960 n. 1, 148 L.Ed.2d 866. Although the Court granted *certiorari* on the question whether plaintiffs may sue their state employers for damages under Title II of the ADA, that portion of the writ was dismissed as improvidently granted. *See id.*

The Circuits remain split on the question. *See, e.g., Shaboon v. Duncan,* 252 F.3d 722 (5th Cir.2001) (following *Coolbaugh v. State of Louisiana,* 136 F.3d 430, 438 (5th Cir.1998), *cert. denied,* 525 U.S. 819, 119 S.Ct. 58, 142 L.Ed.2d 45 in hold-

ing that states enjoy no Eleventh Amendment immunity from Title II); *Wroncy v. Oregon Dept. of Transp.*, 2001 WL 474550 *1 (9th Cir. May 4, 2001) (holding the states do not have Eleventh Amendment immunity from Title II claims, and that *Garrett* did not require a reconsideration of that proposition); *Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Div.*, 227 F.3d 627 (6th Cir.2000) (Eleventh Amendment bars claims against the state under Title II of the ADA), *reh'g en banc granted, opinion vacated* (Dec. 12, 2000); *Dare v. California*, 191 F.3d 1167, 1173–74 (9th Cir.1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 1187, 149 L.Ed.2d 103 (2001) (states do not have Eleventh Amendment Immunity from Title II ADA claims); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1010 (8th Cir.1999) (en banc), *cert. granted*, 528 U.S. 1146, 120 S.Ct. 1003, 145 L.Ed.2d 947, *cert. dismissed*, 529 U.S. 1001, 120 S.Ct. 1265, 146 L.Ed.2d 215 (2000) (holding "that the extension of Title II of the ADA to the states was not a proper exercise of Congress's power under Section 5 of the Fourteenth Amendment. Consequently, there is no valid abrogation of [the State's] Eleventh Amendment immunity from private suit in federal court . . . ."); *Brown v. North Carolina Div. of Motor Vehicles*, 166 F.3d 698 (4th Cir.1999), *cert. denied,* —— U.S. ——, 121 S.Ct. 1186, 149 L.Ed.2d 103 (2001) (Title II of the ADA did not validly abrogate Eleventh Amendment Immunity). The Tenth Circuit has yet to rule, and there is no clear trend among the District Courts in this Circuit. *See Johnson v. Oklahoma ex rel. Univ. of Oklahoma Bd. of Regents*, 2000 WL 1114194 (10th Cir. Aug.7, 2000) (noting a split in the Circuits and the grant of certiorari in *Garrett*, but declining to address whether Title II of the ADA abrogates Eleventh Amendment immunity); *Thompson v. Colorado*, 29 F.Supp.2d 1226, 1236 (D.Colo.1998) (Title II of the ADA was enacted pursuant to

Congress' Fourteenth Amendment, § 5 enforcement powers; therefore, Congress has properly abrogated the State's sovereign immunity from suit in federal court for alleged violations of Title II of the ADA).

## C. Congressional Abrogation of the Eleventh Amendment in Title II of the ADA

■ Title I of the ADA prohibits discrimination by employers. Title II prohibits discrimination by public entities. "Whereas Title I proscribes discrimination against employees or prospective employees because of their disabilities, *see* 42 U.S.C. §§ 12111–12112, Title II bars public entities from discriminating on the basis of disability in the provision of programs and benefits. *See* 42 U.S.C. §§ 12131–12132." *McGuinness v. University of New Mexico Sch. of Med.*, 170 F.3d 974, 977 (10th Cir.1998). 42 U.S.C. § 12132 states:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

A prevailing plaintiff is entitled to compensatory damages, *see Davoll v. Webb*, 194 F.3d 1116, 1141 (10th Cir.1999); *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208, (1992), as well as equitable relief. *See Tafoya v. Bobroff*, 865 F.Supp. 742, 748–49 (D.N.M. 1994); 42 U.S.C. § 12133.

Although not conclusive, *Garrett* is instructive in the proper analysis of the abrogation claim here. The Court in *Garrett* began by reiterating that Congress could abrogate Eleventh Amendment immunity, if at all, through § 5 of the Fourteenth Amendment. "It is clear that Congress

intended to invoke § 5 as one of its bases for enacting the ADA." *Garrett*, 531 U.S. 356, 121 S.Ct. 955, 962 n. 3, 148 L.Ed.2d 866 (citing 42 U.S.C. §§ 12101(b)(4)). Section 1 of the Fourteenth Amendment provides: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. Section 5 of the Fourteenth Amendment gives Congress "power to enforce, by appropriate legislation, the provisions of this article." U.S. CONST. amend. XIV, § 5; *City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). However, legislation passed pursuant to § 5 which reaches "beyond the scope of § 1's actual guarantees must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.' " *Garrett*, 121 S.Ct. at 963 (citation omitted).

■ *Garrett* then reemphasized its holding in *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) that:

> States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions towards such individuals are rational. They could quite hard headedly—and perhaps hardheartedly—hold to job-qualification requirements which do not make allowance for the disabled. If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause.

*Garrett*, 121 S Ct. at 964. Thus, "in order to authorize private individuals to recover money damages against the States, there must be a pattern of discrimination by the States which violates the Fourteenth Amendment, and the remedy imposed by Congress must be congruent and proportional to the targeted violation." *Id.* at 967–68. The first part of this test is made more challenging by the Court's determination that a state may discriminate on the basis of disability if such classification is rationally related to a legitimate state interest.

### 1. Patterns of Discrimination by the States

■ The Supreme Court emphasized that in order to properly abrogate the Eleventh Amendment, Congress must make specific findings regarding discrimination by the states which does not have a rational basis. *See id.* at 965–67. Plaintiffs do not address whether Congress recognized a pattern of discrimination by states which violates the Fourteenth Amendment when enacting Title II of the ADA. Further, the Circuit Courts that found states had no Eleventh Amendment immunity from Title II failed to cite to specific Congressional findings. *See Coolbaugh v. State of Louisiana on Behalf of Louisiana Dept. of Pub. Safety & Corr. on Behalf of Louisiana Dept. of Motor Vehicles*, 136 F.3d 430, 435–36 (5th Cir.1998) (enumerating general Congressional findings regarding discrimination against the disabled in American society); *Dare v. California*, 191 F.3d 1167 (9th Cir.1999); *Clark v. California*, 123 F.3d 1267, 1270–71 (9th Cir.1997). *But see Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Div.*, 227 F.3d 627 (6th Cir.2000) (Congress exceeded its power under § 5 of the Fourteenth Amendment when it attempted to abrogate state sovereign immunity in suits brought pursuant to Title II of ADA because Congress's decision to extend the ADA's broad anti-discrimination provisions to the states was not supported by sufficient evidence of

unconstitutional discrimination in public accommodations), *reh'g en banc granted, opinion vacated* (Dec. 12, 2000).

The dissent in *Garrett* attaches "roughly 300 examples of discrimination by state governments themselves in the legislative record." *Id.* at 970 (Breyer, J., dissenting) (citing Appendix C). However, as the majority noted,

> Only a small fraction of [these] relate to state discrimination against the disabled in employment. At most, somewhere around 50 of these allegations describe conduct that could conceivably amount to constitutional violations by the States, and most of them are so general and brief that no firm conclusion can be drawn. The overwhelming majority of these accounts pertain to alleged discrimination by the States in the provision of public services and public accommodations, which areas are addressed in Titles II and III of the ADA.

*Id.* at 966 n. 7. The vast majority of the incidents cited by the Justice Breyer involve cases where the disabled where unable to gain access to public transportation, education, buildings, or services. However, each citation is a short sentence describing, at most, what public area was inaccessible and the type of disability. Such information is insufficient to determine whether a pattern of discrimination by states exists. Further, even if Appendix C shows a pattern of discrimination, it is insufficient to show whether that discrimination was unconstitutional. As the Court noted, a state may rationally, although "quite hard headedly—and perhaps hardheartedly," *id.* at 964, "conserve scarce financial resources" by choosing not to upgrade facilities to accommodate the disabled. *Id.* at 966. I therefore conclude that there is no evidence that Congress recognized a pattern of unconstitutional discrimination against disabled citizens in obtaining services, programs, or activities of a public entity.

### 2. Congruence and Proportionality

Even assuming, however, that Appendix C exhibits a pattern of unconstitutional discrimination, Title II would still fail under the congruence and proportionality requirements stated in *City of Boerne v. Flores,* 521 U.S. 507, 536, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) and reiterated in *Garrett.* In *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), the Court explained that Congress's power under § 5 is "remedial in nature," and emphasized that Congress "does not enforce a constitutional right by changing what the right is." *Id.* at 519, 117 S.Ct. 2157. Thus, the Court held that in order for legislation to constitute a valid exercise of Congress's power under § 5 of the Fourteenth Amendment, there must be a "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *Id.* at 519–20.

Here, Title II of the ADA is " 'so out of proportion to a supposed remedial or preventive object that it cannot be understood as responsive to, or designed to prevent, unconstitutional behavior.' " *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 120 S.Ct. 631, 647, 145 L.Ed.2d 522 (2000) (quoting *City of Boerne,* 521 U.S. at 532, 117 S.Ct. 2157). Like the ADEA and Title I of the ADA, Title II of the ADA prohibits a broad swath of conduct without permitting any inquiry into the State's legitimate interests. Indeed, Title II's prohibition of "discrimination" is even more stringent than the provisions ruled violative in *Kimel,* given that the ADEA incorporates statutory exceptions that Title II of the ADA does not. *See Kimel,* 120 S.Ct. at 647. Under the statute,

> State practices affecting the disabled do not receive the same presumption of le-

gitimacy that they do under rational basis scrutiny.... [U]nder the ADA it is no longer the case that any rational reason will support the State's action.... Moreover, while the Fourteenth Amendment allows the State to make broad generalizations about the disabled, the ADA "starts with a presumption in favor of requiring the [State] to make an individualized determination...."

*Stevens v. Illinois Dept. of Trans.*, 210 F.3d 732, 738 (7th Cir.2000) (citations omitted) (discussing the ADA in general). Thus, the ADA "prohibits substantially more [State conduct] than would likely be held unconstitutional under the applicable equal protection, rational basis standard." *Kimel*, 120 S.Ct. at 647.

Further, Title II defines a "qualified individual with a disability" to mean:

> an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.

42 U.S.C. § 12131(2). "In effect, this definition imposes an affirmative obligation on public entities to accommodate disabled individuals.... There is no statutory exception to Title II's duty to accommodate; the only exceptions appear in the enforcing agency's regulations." *Popovich v. Cuyahoga County Court of Common Pleas, Domestic Relations Div.*, 227 F.3d 627, 638 (6th Cir.2000), *reh'g en banc granted, opinion vacated,* (Dec. 12, 2000). Yet here "the regulatory exceptions ... result in a scheme that imposes far more restrictions on state action than would be the case under a rational basis standard." *Id.* at 639. *See* 28 C.F.R. § 35.130(b)(7) (excus-

ing a public entity from the obligation to modify policies, practices or procedures only if the entity "can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity."); 28 C.F.R. § 35.164 (adopting a "fundamental alteration" exception and an "undue financial and administrative burdens" exception and requiring the public entity to bear the burden of proving such alteration or burdens "after considering all resources available for use in the funding and operation of the service, program, or activity.").

I conclude that even if Congress had identified a pattern of discrimination against the disabled in programs and services that bore no rational relationship to a legitimate state interest, the remedies crafted by Title II of the ADA are not sufficiently congruent and proportional to the harm it sought to alleviate.

Accordingly, IT IS ORDERED that:

1. Defendants' motion to dismiss Plaintiffs' claim under Title II of the Americans with Disabilities Act is GRANTED.