Wynetha **WILLIAMSON**, Plaintiff,

v.

**GEORGIA DEPARTMENT OF HUMAN RESOURCES and Georgia Regional Hospital**, Defendants.

No. CV 100–069.

United States District Court,
S.D. Georgia,
Augusta Division.

July 13, 2001.

E. Brian Watkins, Augusta, GA, for plaintiff.

Annette M. Cowart, Christopher Andrew McGraw, Susan L. Rutherford, Gray, Hedrick & Edenfield, LLP, Atlanta, GA, for defendants.

## ORDER

BOWEN, Chief Judge.

Defendants have moved for summary judgment. Plaintiff seeks damages for employment discrimination under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), and for alleged violations of the Family and Medical Leave Act, 29 U.S.C. §§ 2601–54 ("FMLA"). A recent decision by the United States Supreme Court affects the outcome of this matter. The Order of April 30, 2001 (Doc. No. 28) gave notice to the United States that the Court was considering the constitutionality of a congressional act. This Order also gave the government sixty days to intervene or present argument. The United States never responded. The motion for summary judgment is now ready for consideration. For the following reasons, Plaintiff's suit is **DISMISSED** for lack of subject matter jurisdiction.

### I. Background

Georgia Regional Hospital is not a legal entity capable of being sued, but it is an institution of the Georgia Department of Human Resources. The Georgia Department of Human Resources is an agency of the State of Georgia. In effect, Plaintiff brings her ADA and FMLA claims against the State of Georgia.

For nearly 30 years, Plaintiff worked as a licensed practical nurse at Georgia Regional Hospital in Augusta. A licensed practical nurse administers medication to hospital patients. Typically, Plaintiff would pop, punch, or tear pills out of medicine packets before giving the pills to patients.

Plaintiff developed carpal tunnel syndrome later in her career. This condition interfered with Plaintiff's ability to administer medicine. Although Defendant assigned Plaintiff to clerical work for some time, Plaintiff also took a leave of absence. Eventually, however, she returned to her duties of dispensing medication. Plaintiff alleges that Defendant forced her to take leave in violation of the FMLA and failed to offer a reasonable accommodation in violation of the ADA.

Plaintiff claims the State is liable for damages under the ADA and the FMLA. Defendant contends the Eleventh Amendment to the United States Constitution immunizes it from Plaintiff's lawsuit. A recent decision by the United States Supreme Court and case law of the Eleventh Circuit provide guidance for resolving these issues.

### II. Requirements for Summary Judgment

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must view the facts in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), and must draw "all justifiable inferences in [its] favor," *United States v. Four Parcels of Real Property,* 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). How to carry this burden depends on who bears the burden of proof at trial. *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential ele-

ments of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry the initial burden in one of two ways—by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Jones v. City of Columbus*, 120 F.3d 248, 254 (11th Cir.1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. *Clark*, 929 F.2d at 608.

If—and only if—the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* Again, how to carry this burden depends on who bears the burden of proof at trial. If the *movant* has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. If the *non-movant* bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Fitzpatrick*, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* at 1116–17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed.R.Civ.P. 56.

The Clerk has given the non-moving party notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 12.) Therefore, the notice requirements of *Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir.1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## III. Analysis

The Eleventh Amendment declares:

> The Judicial power of the United Sates shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI. Interpretations of this Amendment have extended its application to "suits by citizens against their own states." *Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 962, 148 L.Ed.2d 866 (2001). Congress may abrogate Eleventh Amendment immunity, but it must clearly express an

intent to do so and must "act pursuant to a valid grant of constitutional authority." *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). Courts have recently addressed the issue of whether Congress properly abrogated Eleventh Amendment immunity when it passed the ADA and the FMLA.

*A. The ADA*

In *Garrett,* the Supreme Court ruled that the Eleventh Amendment bars individuals from suing a State for money damages under Title I of the ADA. *Garrett,* 121 S.Ct. at 960; *see also* 42 U.S.C. §§ 12111–17 ("Title I") (prohibiting employment discrimination against disabled people). Congress made no findings of pervasive or recurring employment discrimination by the States. *Garrett,* 121 S.Ct. at 966. Consequently, the Court held that Congress went beyond its Fourteenth Amendment remedial authority when it applied Title I to the States. *Id.* at 960. *Garrett* did not extend this holding beyond Title I, and States' immunity from Title II suits remains an open question. *Garrett,* 121 S.Ct. at 960 n. 1; *see* 42 U.S.C. §§ 12131–65 ("Title II") (banning public entities from discriminating against disabled people in provision of public services).

*Garrett*'s limitation to Title I is pertinent to this case. Title II provides that:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. A public entity includes divisions, departments, and agencies of state governments. § 12131(1)(A)-(B). Although Title I specifically addresses employment discrimination by State governments, the Eleventh Circuit has interpreted the broad language of Title II also to include claims of employment discrimination. *Bledsoe v. Palm Beach County Soil & Water Conservation Dist.,* 133 F.3d 816, 820 (11th Cir.1998); *see* 42 U.S.C. § 12132 (prohibiting States from "subject[ing] [disabled persons] to discrimination"). Given this interpretation, Plaintiff's allegations could fall under Title II. The Eleventh Circuit, however, has not addressed whether Title II still applies to the States in light of *Garrett.* The answer to this question depends on whether Congress properly exercised its power under the Fourteenth Amendment when it abrogated the States' immunity from Title II lawsuits.

■ As mentioned, the general rule is that States enjoy immunity from lawsuits commenced by private persons in federal court. U.S. Const. amend XI. Congress may abrogate this immunity when it acts "pursuant to a valid exercise of constitutional authority." *Kimel,* 528 U.S. at 73, 120 S.Ct. 631. Congress's Article I powers supply no such means for abrogation, but constitutional amendments passed after the Eleventh Amendment provide proper authority. However, certain preconditions restrict the use of this power.

■ The Fourteenth Amendment gives Congress authority to abrogate the States' immunity. The Fourteenth Amendment's first section prohibits States from denying people "due process of law" and "equal protection under the laws." U.S. Const. amend XIV, § 1. Section 5 grants Congress the power to enforce these rights by enacting "appropriate legislation." U.S. Const. amend XIV, § 5. When legislating under § 5, Congress may pass laws that surpass mere enforcement and go so far as to deter unconstitutional behavior. *Garrett,* 121 S.Ct. at 963. In the context of Fourteenth Amendment legislation, § 5 gives Congress the power to

abrogate Eleventh Amendment Immunity. *Id.* at 962.

■ To abrogate immunity through § 5, Congress must identify a "pattern of unconstitutional behavior by the States." *Id.* at 966. This rule encompasses two requirements. First, States—not just any public entity—must be responsible for the documented conduct. U.S.Const. amend XIV, § 1; *see Garrett,* 121 S.Ct. at 964–65 (reiterating state action requirement of Fourteenth Amendment and refusing to impute actions of municipalities to the States). Second, the identified actions must rise to the level of infringements upon constitutional rights. *Garrett,* 121 S.Ct. at 964. In recent decisions, the Supreme Court has reemphasized the necessity of these findings. *See Garrett,* 121 S.Ct. at 965 (stating that Congress improperly exercised its abrogation power because it did not document a "pattern of unconstitutional employment discrimination" by the States against the disabled); *Kimel,* 528 U.S. at 89, 120 S.Ct. 631 (finding that the Age Discrimination in Employment Act failed to abrogate Eleventh Amendment immunity because, in part, Congress "never identified a pattern of age discrimination by the States"); *City of Boerne v. Flores,* 521 U.S. 507, 535, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) (invalidating Religious Freedom Restoration Act partially because the "legislative record lacks examples of modern instances of generally applicable state laws passed because of religious bigotry"). This analysis has become known as the "congruence and proportionality" test, *Kimel,* 528 U.S. at 81, 120 S.Ct. 631, and its requirements present problems for Title II.

■ To begin with, relying solely upon a person's disability to prove a constitutional violation is a difficult task. Disabled people do not constitute a suspect or quasi-suspect class under current Equal Protection Clause jurisprudence. *Garrett,*

121 S.Ct. at 963. A state's action with regard to a disabled person need only be rational. *Id.* at 964. A multitude of reasons satisfy this undemanding standard. *See, e.g., id.* at 966 ("it would be entirely rational (and therefore constitutional) for a state employer to conserve scarce financial resources by hiring employees who are able to use existing facilities"). In addition, Congress may not define the scope of constitutional protections afforded the disabled. *City of Boerne,* 521 U.S. at 519–24, 117 S.Ct. 2157. That responsibility is reserved for the United States Supreme Court. *Id.*

The ADA's findings and legislative history document some incidents of discrimination against the disabled. The "findings and purpose" section notes that approximately 43 million people suffer from some form of disability. 42 U.S.C. § 12101(a)(1). This section also summarizes society's historically unfair treatment of the disabled and the effect of this discrimination. § 12101(a)(2)-(6). In the various committee reports on the ADA, Congress heard from several disabled individuals and entities that represent them. *See e.g.,* H.R.Rep. No. 101–485, pt. 2 (1990), U.S.Code Cong. & Admin.News 1990, p. 303 (report from House Committee on Education and Labor). Specific incidents involving irrational actions by the States are remarkably absent from these background materials.

■ The record assembled by Congress fails to identify a pattern of irrational state conduct toward the disabled in the provision of public services. As mentioned above, identifying a pattern of discrimination is necessary before Congress may use its § 5 power to abrogate the States' Eleventh Amendment immunity. *Garrett,* 121 S.Ct. at 965. The ADA's "findings and purpose" section provides little more than

sweeping generalizations about societal attitudes. 42 U.S.C. § 12101(a)(2). Similarly, the legislative history supplies anecdotal evidence but fails to link these actions to the States. H.R.Rep. No. 101–485, pt. 2, IV (1990). For the most part, private actors and local governments seem responsible for the treatment documented by Congress. *See id.* (containing testimony from Judith Heumann of the World Institute on Disability, in which she describes actions by unidentified actors, including: an elementary school, a high school, an airline, a college, and a movie theater); *see also Garrett,* 121 S.Ct. at 964 (refusing to impute actions of local governments to the States for purposes of abrogating Eleventh Amendment immunity). Even if these incidents were liberally construed to involve state action, it is unclear whether the actions were irrational. *See Garrett,* 121 S.Ct. at 963–64 (holding that state action toward disabled need only be rational). The record does establish a pattern of unconstitutional conduct by the States.

A comparison of the ADA to the Voting Rights Act of 1965 further reveals the deficiencies in Congress's attempt to abrogate the States' immunity. Although the Voting Rights Act relied upon the enforcement power of the Fifteenth Amendment, it carefully documented "the problem of racial discrimination in voting." *South Carolina v. Katzenbach,* 383 U.S. 301, 308, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966). This investigation and analysis revealed that States routinely implemented discriminatory devices to disenfranchise blacks. *Id.* at 312–13, 86 S.Ct. 803. Through its exploration of the issue, Congress identified a widespread pattern of unconstitutional activity. *Id.* These findings allowed Congress to abrogate the States' immunity and serve as the model for abrogation.

When enacting the ADA, however, Congress recorded no comparable pattern of unconstitutional conduct in the provision of State services. With regard to public services, one committee found that "inconsistent treatment of people with disabilities by different State or local government agencies is both inequitable and illogical for a society committed to full access for people with disabilities." H.R.Rep. No. 101–485, pt. 2 (1990), U.S.Code Cong. & Admin.News 1990, pp. 303, 319. However, neither this report nor the congressional findings concretely identify specific practices or conduct through which the States have subjected the disabled to irrational treatment. The report and the findings also fail to distinguish discrimination by state governments from mistreatment by local governments. Congress must fulfill these obligations before abrogating the States' immunity. *Garrett,* 121 S.Ct. at 967.

 Because Congress failed to adequately identify a pattern of irrational State conduct when it enacted Title II, it improperly abrogated the States' Eleventh Amendment immunity. At this point, I note that this issue has created a conflict among the United States Courts of Appeal. *Compare Alsbrook v. City of Maumelle,* 184 F.3d 999, 1010 (8th Cir.1999) (holding that Title II does not apply to the States) *with Coolbaugh v. Louisiana,* 136 F.3d 430 (5th Cir.1998) (ruling that Title II does apply to the States). *But see Kazmier v. Widmann,* 225 F.3d 519, 529 (5th Cir.2000) (stating that the "continuing validity of *Coolbaugh* has been called seriously into question by ... *Kimel* "). Eleventh Amendment immunity relates to the Court's subject-matter jurisdiction. *Smith v. Avino,* 91 F.3d 105, 107 (11th Cir.1996). The Eleventh Amendment prohibits suits for money damages, and Plaintiff has sought only monetary relief. Defendant is an agency of the State of Georgia. Accordingly, this Court lacks jurisdiction

over Plaintiff's ADA claim and must dismiss it.

### B. The FMLA

The Eleventh Amendment also prevents Plaintiff from pursuing her FMLA claim. The FMLA gives an employee the right to have leave from her employment if she is experiencing one of several occurrences. 29 U.S.C. § 2612(a)(1). Acceptable grounds for leave include pregnancy, adoption or foster care, illness of a family member, and personal illness. § 2612(a)(1)(A)-(D). Specifically, the FMLA permits an employee to take a leave of absence if a "serious health condition" interferes with her ability to work. § 2612(a)(1)(D). Plaintiff presumably brings suit under § 2612(a)(1)(D) because her allegations mention nothing of pregnancy, adoption, foster care, or family illness. Instead, she apparently claims her carpal tunnel syndrome constituted a "serious health condition." § 2612(a)(1)(D). Plaintiff contends that Defendant violated the FMLA with regard to her employment and this alleged disability.

The Eleventh Amendment also prevents Plaintiff from asserting her FMLA claim. The Eleventh Circuit has specifically held that States enjoy Eleventh Amendment immunity from § 2612(a)(1)(D) claims by state employees. *Garrett v. University of Ala.*, 193 F.3d 1214, 1219 (11th Cir.1999). Because Congress failed to abrogate Defendant's Eleventh Amendment immunity under this section of the FMLA, Plaintiff's FMLA claim must also be dismissed for lack of subject matter jurisdiction. *Avino*, 91 F.3d at 107.

### C. Constitutional Claims

In a valiant effort to assert a viable claim, Plaintiff's most recent filing argues that Defendant's actions toward her were irrational. Presumably, Plaintiff believes the State violated the Equal Protection Clause. The mechanism for bringing such

a suit, however, is 42 U.S.C. § 1983, not the ADA. Aside from the fact that her Complaint mentions nothing of Defendants' liability under § 1983, Plaintiff ignores the rule that § 1983 also failed to abrogate the States' Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Although Plaintiff could bring a § 1983 against an agent of the State in his individual capacity, *Hafer v. Melo*, 502 U.S. 21, 30, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), she has named no individual defendants.

### IV. Conclusion

Plaintiff originally filed this case in the State Court of Richmond County, Georgia. Curiously, Defendant removed the suit to this Court and then argued that this Court lacks jurisdiction over the matter. Claims under the ADA and the FMLA do not rest within the exclusive jurisdiction of federal courts. *See* 29 U.S.C. § 2617(a)(2) (allowing suit for damages to be brought in "any Federal or State court of competent jurisdiction"); *Williams v. Secretary of Executive Office of Human Svcs.*, 414 Mass. 551, 609 N.E.2d 447 (1993) (hearing ADA suit). A state court possibly could hear this case, but that question is left to its discretion. Because Defendant removed a case in which this Court lacks jurisdiction, the proper course of action appears to be remand. Accordingly, this case is **DISMISSED WITHOUT PREJUDICE** for want of subject matter jurisdiction and **REMANDED** to the State Court of Richmond County, Georgia.