Michael JONES,

v.

Commonwealth of PENNSYLVANIA, Department of Welfare Bureau of Blindness and Visual Services.

No. 99–4212.

United States District Court, E.D. Pennsylvania.

Aug. 28, 2001.

Michael Jones, Philadelphia, PA, pro se.

Claudia M. Tesoro, Kristen Kirk Mayock, Office of Attorney General, Philadelphia, PA, for Defendant.

*MEMORANDUM*

BARTLE, District Judge.

Plaintiff Michael Jones filed this action against the Commonwealth of Pennsylvania for violations of 42 U.S.C. § 1983 and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.* In a Memorandum and Order dated January 5, 2000, this court granted the Commonwealth's motion to dismiss plaintiff's § 1983 claims on Eleventh Amendment immunity grounds. *Jones v. Pennsylvania*, Civ. A. No. 99–4212, 2000 WL 15073, at *1 (E.D.Pa. Jan.5, 2000). However, persuaded by "a strong majority of circuits," we determined that Congress had effectively abrogated this immunity with respect to claims pursuant to Title II of the ADA. Therefore, certain of plaintiff's claims were allowed to proceed.[1] Before the court is defendant's motion for reconsideration.

The facts giving rise to plaintiff's complaint need not be reiterated here. *See Jones*, 2000 WL 15073, at *1. The procedural history of this case, however, requires brief explanation. As noted above,

---

1. Plaintiff's ADA claims that arose prior to August 20, 1997 were dismissed as being barred by the applicable statute of limitations. *Jones*, 2000 WL 15073, at *2.

on January 5, 2000, we granted in part and denied in part defendant's motion to dismiss. Defendant then sought and obtained leave to file a motion for reconsideration of that decision in light of the Supreme Court's January 11, 2000 opinion in *Kimel v. Florida Board of Regents,* 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).[2] Before the Commonwealth filed its motion, however, the Supreme Court granted petitions for a writ of certiorari in two cases which specifically addressed application of Eleventh Amendment immunity in ADA cases.[3] We therefore stayed all proceedings in this case pending future action from the high Court. On February 21, 2001, the Court announced its decision *Board of Trustees of the University of Alabama v. Garrett,* 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001), holding that "Congress did not validly abrogate the States' sovereign immunity from suit by private individuals for money damages under Title I [of the ADA]." *Id.* at 968 n. 9. Removing this case from the civil suspense docket, we then ordered defendant to file a motion for reconsideration. The Commonwealth filed the instant motion on April 30, 2001.

■ "[A] judgment may be altered or amended if the party seeking reconsideration shows ... an intervening change in the controlling law...." *Max's Seafood Cafe ex rel. Lou Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999) (citing

*North River Ins. Co. v. CIGNA Reinsurance Co.,* 52 F.3d 1194, 1218 (3d Cir.1995)). The Commonwealth asserts that recent Supreme Court holdings, including the *Garrett* opinion, require this court to reverse its prior decision that states are not immune from ADA claims.

■ It is now well-settled that Congress can abrogate a state's sovereign immunity only if it unequivocally expresses its intent to do so and if it acts pursuant to a valid exercise of power under § 5 of the Fourteenth Amendment. *Garrett,* 121 S.Ct. at 962. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73, 79, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); *Florida Prepaid Postsecondary Ed. Expense Bd. v. College Sav. Bank,* 527 U.S. 627, 636, 119 S.Ct. 2199, 144 L.Ed.2d 575 (1999); *Alden v. Maine,* 527 U.S. 706, 730–733, 119 S.Ct. 2240, 144 L.Ed.2d 636 (1999); *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 55, 72–73, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). Section 12202 clearly states Congress' intent to hold states liable for violations of the ADA.[4] *See Lavia v. Pennsylvania,* 224 F.3d 190, 196 (3d Cir.2000). Thus, the only question before us is whether Congress' enactment of Title II is a valid exercise of § 5 power.

■ Section 5 is the enforcement provision of the Fourteenth Amendment

---

**2.** In *Kimel,* the Court held states remain immune from claims pursuant to the Age Discrimination in Employment Act. 528 U.S. at 91, 120 S.Ct. 631.

**3.** Those two cases, *Alsbrook v. City of Maumelle* and *Florida Department of Corrections v. Dickson,* were never decided by the Court. The writs of certiorari in both were dismissed pursuant to Supreme Court Rule 46.1.

**4.** That section provides:
A State shall not be immune under the eleventh amendment to the Constitution of

the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter. In any action against a State for a violation of the requirements of this chapter, remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in an action against any public or private entity other than a State. 42 U.S.C. § 12202.

which allows Congress to enact "appropriate legislation" to remedy or deter violations of the Amendment's due process and equal protection guarantees. *Garrett*, 121 S.Ct. at 963 (citing *City of Boerne v. Flores*, 521 U.S. 507, 536, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997)). *See* U.S. Const. amend XIV, §§ 1, 5. Such legislation may prohibit conduct which does not itself constitute a constitutional violation. *Kimel*, 528 U.S. at 81, 120 S.Ct. 631. However, "it is the responsibility of [the Supreme] Court, not Congress, to define the substance of constitutional guarantees. Accordingly, § 5 legislation reaching beyond the scope of [the Fourteenth Amendment's] actual guarantees must exhibit 'congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end.' " *Garrett*, 121 S.Ct. at 963 (quoting *City of Boerne*, 521 U.S. at 519–24, 117 S.Ct. 2157). Thus, if the activity which the legislation purports to address is too distantly related to that which is constitutionally forbidden, Congress has exceeded its limited authority under § 5.

■ We acknowledge that the Supreme Court expressly declined to decide in *Garrett* whether Title II of the ADA is "appropriate legislation under § 5." *Id.* at 960 n. 1. *Garrett* dealt with Title I of the ADA. That decision, therefore, is not dispositive of the question before this court. *See, e.g., Wroncy v. Oregon Dep't of Transp.*, 2001 WL 474550, at *1 (9th Cir. May 04, 2001). Nevertheless, we believe that the analytical framework established by the Court is clearly applicable to this case and requires a reversal of our earlier conclusion that Congress abrogated states' Eleventh Amendment immunity under Title II of the ADA. We now hold that Title II is not a valid exercise of Congress' § 5 power and that the Commonwealth is immune from plaintiff's ADA claim.

■ The first step in determining whether the remedies provided by Title II are congruent and proportional to the problem of disability discrimination by the states is to identify "the scope of the constitutional right at issue." *Garrett*, 121 S.Ct. at 963. In this case, the constitutional demand is that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985) (citation omitted). This equal protection guarantee requires the states to pursue rationally a legitimate government interest. "Thus, ... States are not required by the Fourteenth Amendment to make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Garrett*, 121 S.Ct. at 964.

Title II, however, does not merely proscribe irrational or intentional discrimination against individuals with a disability. Rather, the statute and its accompanying regulations address a much broader scope of otherwise constitutional activity by requiring public entities, including states, to provide affirmative accommodations for the disabled. *Thompson v. Colorado*, No. 99–1045, 2001 WL 883305, at *6–*7 (10th Cir. Aug.7, 2001) (citations omitted).

We next examine whether Congress "identified a history and pattern of unconstitutional [ ] discrimination by the States against the disabled." *Garrett*, 121 S.Ct. at 964. Congress explicitly found that:

discrimination against individuals with disabilities persists in such critical areas as employment, housing, public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services; ...

individuals with disabilities continually encounter various forms of discrimination, including outright intentional ex-

clusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities.

42 U.S.C. § 12101(a)(3), (5).

 While the historical record contains some evidence to support these findings, "most of these occurrences involve local officials and not the states." *Thompson v. Colorado*, 258 F.3d 1241, 1253 (10th Cir.2001) (citation and footnote omitted). Because only states are entitled to Eleventh Amendment protection, "[i]t would make no sense to consider" the actions of cities or counties when deciding whether Congress validly abrogated that immunity. *Garrett*, 121 S.Ct. at 965. In addition, the incidents in the record mostly describe the states' refusal to make accommodations for the disabled, rather than outline a pattern of irrational, and therefore unconstitutional, discrimination.

In sum, the record established by Congress with respect to Title II of the ADA does not sufficiently demonstrate that states have engaged in a pattern of unconstitutional discrimination. *See Thompson*, 258 F.3d 1241, 1255; *Frederick L. v. Dep't of Pub. Welfare*, 157 F.Supp.2d 509, 528 (E.D.Pa.2001); *Williamson v. Georgia Dep't of Human Res.*, No. CV 100–069, 2001 WL 849423, at 5 (N.D.Ga. July 13, 2001); *Neiberger v. Hawkins*, No. CIV.A. 99–B–112, 2001 WL 831263, at *6 (D.Colo. July 9, 2001). "Without this foundation, Title II cannot be considered preventive or remedial legislation that is congruent and proportional to any constitutional violation." *Thompson*, 258 F.3d 1241, 1255.

Accordingly, the motion of the Commonwealth to reconsider will be granted and this action will be dismissed.

BY THE COURT:

*ORDER*

AND NOW, this __ day of August, 2001, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that the motion of the Commonwealth for reconsideration is GRANTED and this action is DISMISSED.